UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

BRIAN EINES,                          )
                                      )
                   Plaintiff,         )
                                      )
            v.                        )        No. 1:21-cv-00354-JPH-MPB
                                      )
MAYNARD, et al.,                      )
                                      )
                   Defendants.        )

**Order Denying Defendants' Motion for Summary Judgment
on Affirmative Defense of Exhaustion**

Plaintiff Brian Eines, a state prisoner, alleges that Defendants violated his Eighth Amendment rights by serving him a meal that was not properly handled and made him sick. Defendants argue they are entitled to summary judgment because Mr. Eines failed to exhaust available administrative remedies before filing this lawsuit.

For the reasons explained below, Defendants' motions for summary judgment, dkts. [24], and [28], are **denied.**

## I.  Standard of Review

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The applicable substantive law will dictate which facts are material." *Nat'l Soffit & Escutcheons, Inc., v. Superior Sys., Inc.*, 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson*, 477 U.S. at 248). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

1

## II.  Undisputed Facts

### A. Grievance Process

Mr. Eines was an inmate housed at Pendleton Correctional Facility ("Pendleton"). Dkt. 1 at 1. There was a Grievance Process in place at Pendleton through which inmates could grieve the actions of individual staff and any concerns relating to the conditions of their care or supervision. Dkt. 28-1 ¶ 22; Offender Grievance Process, Policy and Procedure 00–02–301 (effective April 1, 2020) at Dkt. 28-2.[1] Information regarding the Grievance Process was provided to inmates when they arrived at Pendleton, and a copy of the Grievance Process was also available through the Law Library. Dkt. 28-1 ¶¶ 23–25; dkt. 26-1 ¶ 6.

The Grievance Process consists of three steps: 1) a formal attempt to solve a problem or concern following unsuccessful attempts at informal resolutions; 2) a written appeal to the Warden/designee; and 3) a written appeal to the Department Grievance Manager. Dkt. 28-2 at p. 3.

Regarding the first step, the Grievance Process provides the following:

> An offender wishing to submit a grievance shall submit a completed State Form 45471, "Offender Grievance," no later than ten (10) business days from the date of the incident giving rise to the complaint or concern to the Offender Grievance Specialist.
>
> The Offender Grievance Specialist must either return an unacceptable form or provide a receipt for an accepted form within ten (10) business days of receipt. If an offender does not receive either a receipt or a rejected form from the Offender Grievance Specialist within ten (10) business days of submitting it, the offender shall notify the Offender Grievance Specialist of that fact (retaining a copy of the notice) and the Offender Grievance Specialist shall investigate the matter and respond to the offender's notification within ten (10) business days.

Dkt. 28-2 at p. 9.

---

[1] The Aramark Defendants present the testimony of Laura Renee Bodkin in support of their motion for summary judgment. Ms. Bodkin's testimony relies on an earlier version of the grievance process. Dkt. 26-1 ¶ 4 (referencing Offender Grievance Process, 00-02-301 (effective October 1, 2017)). Testimony related to this superseded policy is disregarded.

**B. Mr. Eines's Attempts to File a Grievance**

Mr. Eines testified that he was served food that sat on a delivery cart at room temperature from 10:30 am to 4:00 pm on November 25, 2020. Dkt. 31-2 at pp. 6–7. After eating this food, he became ill. *Id.* at p. 7.

On November 26, 2020, Mr. Eines wrote a grievance on State Form 45471 regarding the contaminated trays that were served. Dkt. 31-2 at p. 1. His unit was on lockdown status, so he placed the formal grievance on his door to be picked up and turned in by custody staff. Dkt. 31-2 at pp. 7–8.

Mr. Eines did not receive a receipt for his grievance so on December 19, 2020, he wrote to the grievance specialist asking about the status of his grievance. Dkt. 31-2 at p. 5 (request for interview) and p. 8 (declaration). On December 23, 2021, Mr. Eines received a reply from the grievance specialist, Ms. Conyers, stating that she had not received a November 26, 2020, grievance about ingesting contaminated food that made him sick. Dkt. 31-2 at p. 8 (citing dkt. 31-2).

Immediately after receiving the response from Ms. Conyers, Mr. Eines re-wrote the November 26, 2020, grievance and turned it in to his case manager so the case manager could turn it in personally and explain that the original grievance was lost or not turned in. Dkt. 31-2 at p. 8. Mr. Eines attempted to turn in the grievance three times explaining that he should not be penalized for custody staff's failure to timely turn in his grievance. *Id.* Each time his formal grievance was returned as untimely. Dkt. 31-2 at pp. 2–4.

Mr. Eines did not complete all three steps of the grievance process before filing this lawsuit. Complaint. Dkt. 28-1 ¶ 31.

### III.  Discussion

Defendants argue that because the grievance specialist did not receive Mr. Eines's formal grievance within 10 business days of the alleged incident, Mr. Eines failed to exhaust his administrative remedies. Mr. Eines argues that he did timely submit his grievance and that the administrative remedy process was not available to him.

### A. The Exhaustion Requirement

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) (footnote omitted); *see also Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (*quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002))). Strict compliance is required with respect to exhaustion, and a prisoner must properly follow the prescribed administrative procedures in order to exhaust his remedies. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

A prisoner is only required to exhaust administrative remedies that are available. "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). Remedies may be deemed unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1860 (2016). Thus, administrative remedies

4

are unavailable to inmates where "affirmative misconduct" prevents prisoners from pursuing administrative remedies. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). Such misconduct may include telling a prisoner that he cannot file a grievance when he in fact can do so, *Thomas v. Reese*, 787 F.3d 845, 847–48 (7th Cir. 2015); denying a prisoner grievance forms, threatening him, and soliciting other inmates to attack him for filing grievances, *Kaba v. Stepp*, 458 F.3d 680, 686 (7th Cir. 2006); and preventing prisoner access to grievance forms, *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004).

"Failure to exhaust is an affirmative defense, so the defendants bear the burden of proof and cannot shift it to require [Mr. Eines] to show that administrative remedies were unavailable." *Gooch v. Young*, 24 F.4th 624, 627 (7th Cir. 2022); *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

### B. Availability of the Grievance Process

Mr. Eines's designated evidence shows that on November 26, 2020, his unit was on lockdown and he was unable to personally turn in his grievance. That day, he placed the grievance on his cell door so it could be picked up by custody staff during their evening security checks and mail pick up. Dkt. 31-1 at p. 3. Mr. Eines argues that the fact that his November 26, 2020, grievance was not received by the grievance specialist is not his fault. Mr. Eines further argues that the Grievance Process was unavailable because after he learned that his grievance was not received, he was denied the opportunity to re-submit the formal grievance.

In reply, Defendants argue that Mr. Eines's grievance was not received because he did not properly submit it. They argue that inmates may submit grievances in three locations: (1) the grievance box at the dining hall, (2) handing it to a caseworker during their rounds, (3) or placing the grievance in the mailbag during evening mail rounds. Dkt. 35 at p. 1. But "prison regulations

define what is (and is not) required of an inmate to 'properly' exhaust"; and Defendants have not established that the grievance policy limits proper submission of a grievance to the three places that the Grievance Specialist testified they "may" be submitted. *Gooch*, 24 F.4th at 627 (citing *Jones v. Bock*, 549 U.S. 199 (2007), and *Woodford v. Ngo*, 548 U.S. 81 (2006)). Nor is "submitted" a defined term in the Grievance Policy. *See* dkt. 28-2, Part III (Definitions).

A reasonable jury could find that Mr. Eines submitted his formal grievance to correctional staff by placing it in his door for pick up while his unit was on lockdown, but it was not processed. Defendants have not established that Mr. Eines was required under the Grievance Process to try alternative means of submission or to wait to submit his grievance until his unit was no longer on lockdown. Mr. Eines was not required "to go on [a] scavenger hunt[] just to take the first step toward filing a grievance." *Hill v. Snyder*, 817 F.3d 1037, 1041 (7th Cir. 2016) (holding prisoner was not "required to pursue all conceivable alternative sources to obtain a [grievance] form"). A reasonable jury could infer from the designated evidence that the grievance process was unavailable to Mr. Eines.

## IV. Conclusion

Defendants' motions for summary judgment, dkts. [24] and [28], are **denied.** Defendants shall have **through March 8, 2022,** to file a notice withdrawing the exhaustion defense, or to request a hearing under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

**SO ORDERED.**

Date: 2/22/2022

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

BRIAN EINES
988189
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

All Electronically Registered Counsel